IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                                   No. CR 15-1278 WJ

EFRAIN SANCHEZ, JR.,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

THIS MATTER comes before the Court upon Defendant Efrain Sanchez's Motion to Suppress Evidence (**Doc. 28**). Having considered the parties' written and oral arguments, the testimony and evidence presented at the suppression hearing, and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED**.

### BACKGROUND

Drug Enforcement Administration ("DEA") Special Agents Jarrell W. Perry ("SA Perry") and Gerald Maestas ("SA Maestas") work in drug interdiction, seeking to intercept couriers transporting illegal narcotics across the country. On March 26, 2015, SA Perry and SA Maestas were at the Greyhound Bus Station in Albuquerque, New Mexico when the eastbound Greyhound bus arrived for its regularly scheduled stop in Albuquerque. During this stop, the passengers disembark and wait in the terminal while the bus is serviced, refueled, and cleaned in the station's wash bay. Video surveillance from the wash bay shows SA Perry exit the empty eastbound Greyhound bus while it is being serviced. SA Perry appears to speak with a

Greyhound employee, and several minutes later, SA Maestas arrives. The two agents appear to have a short conversation and then exit the wash bay.

Defendant Efrain Sanchez ("Mr. Sanchez") alleges that in these situations, based on testimony by the Greyhound Station Manager, the agents routinely search the cargo hold of the bus while the bus is parked in the station's wash bay, comparing the name tags of suspicious luggage with a passenger list provided by Greyhound. Mr. Sanchez alleges that, as a customary practice, SA Perry will lift each bag in the cargo hold and manipulate the contents, and remove certain luggage from the bay and forcefully squeeze and manipulate the luggage further.

Mr. Sanchez suggests that in this case, as SA Perry is aware of the presence of video surveillance in the wash bay, he waits until the bus pulls out of the wash bay and into an adjacent parking lot to search and manipulate bags in the cargo hold. Mr. Sanchez also suggests that the video surveillance showing SA Perry exit the bus indicates that he may have improperly searched the personal belongings of passengers while the bus was parked in the wash bay. Thus, Mr. Sanchez maintains that SA Perry *first* searched the cargo hold of the bus and identified a black suitcase which aroused his suspicion. He then manipulated the bag in order to discern its contents. SA Perry saw the name "Efrain Sanchez" on the suitcase's luggage tag. Once the passengers had re-boarded the bus, SA Perry confronted Mr. Sanchez.

The Government argues that this case begins not with an indiscriminate search of luggage on the bus, but when SA Perry boarded the Greyhound bus, displayed his badge to Mr. Sanchez, identified himself as a police officer, and asked for and received permission to speak with Mr. Sanchez, SA Perry then asked for and received both Mr. Sanchez's bus ticket and identification and returned them to Mr. Sanchez. He noticed that Mr. Sanchez's hand was visibly shaking. SA Perry asked if Mr. Sanchez had any luggage with him, and Mr. Sanchez replied that he had one

2

piece of checked luggage in the cargo hold of the bus. SA Perry asked for and received voluntary permission from Mr. Sanchez to search his luggage for contraband. SA Perry stepped off the bus and located a black-colored suitcase with a Greyhound baggage tag attached in the name of Efrain Sanchez. A search of the suitcase revealed two black attaché cases which SA Perry observed were very heavy. Upon opening the cases, SA Perry observed that both attaché cases were empty. SA Perry subsequently discovered a false compartment built into the middle of each attaché case, and felt hard bundles inside the false compartment of each case. From his training and experience, SA Perry knew that these bundles were consistent with illegal narcotics. The compartments revealed a clear saran-wrapped bundle containing a black-colored substance. SA Perry handcuffed Mr. Sanchez, placing him under arrest. At the DEA office, a field test indicated that both bundles contained a clear crystal-like substance that tested positive for methamphetamine. The two bundles had a gross weight of approximately 5.10 gross kilograms.

Mr. Sanchez filed this Motion to Suppress Evidence (**Doc. 28**) on October 15, 2015. The Government filed a Response (**Doc. 31**) on October 19, 2015. Mr. Sanchez filed a Reply (**Doc. 33**) on November 17, 2015. The Court held a hearing on the Motion on January 7, 2016.

## LEGAL STANDARD

The Fourth Amendment protects the "right of the people to be secure in their . . . effects, against unreasonable searches." U.S. CONST. amend. IV. "Travelers have a legitimate expectation of privacy in their personal luggage, which the Fourth Amendment protects." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998). However, not every investigative technique which reveals something about the contents of a traveler's luggage constitutes a search within the meaning of the Fourth Amendment. *See id*. For example, an agent's touching of a bag's exterior does not necessarily constitute a search. *See id*. at 636–37. The degree of intrusion

is the determining factor as to whether an agent's contact with the exterior of luggage constitutes a search under the Fourth Amendment. *See id*. at 639. When a defendant moves to suppress evidence as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable. *See id*. at 636.

With regard to consent, the Tenth Circuit has articulated a two-step test for determining the validity of consent: "(1) There must be a clear and positive testimony that consent was unequivocal and specific and freely given; and (2) The government must prove consent was given without duress or coercion, express or implied." *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007) . The question of whether consent to search is the product of duress or coercion is determined by the totality of the circumstances. *See United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011). The scope of a search is generally defined by its expressed object, and is limited by the breadth of consent given, applying an objective reasonableness test to measure what a typical person would have understood between the officer and the suspect. *See United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (citations omitted). Any limitation on the extent of a consent to search must come from the person consenting and not from law enforcement. *See United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999).

## DISCUSSION

Mr. Sanchez makes three principal arguments in support of his Motion to Suppress Evidence. First, SA Perry conducted a warrantless "pre-search" of Mr. Sanchez's checked baggage without probable cause. Second, Mr. Sanchez's consent did not purge the taint of the illegal search. Finally, SA Perry's search of the attaché cases exceeded the scope of Mr. Sanchez's consent.

Mr. Sanchez first contends that SA Perry improperly conducted a probing examination of his luggage without a warrant and without probable cause. At the hearing, Mr. Sanchez submitted video surveillance of the wash bay while the eastbound Greyhound bus was parked for servicing. The video surveillance shows SA Perry exit the empty eastbound Greyhound bus while it is being serviced, but shows no evidence of SA Perry searching any bags or even opening the cargo hold of the bus. Mr. Sanchez suggests that in this case, as SA Perry is aware of the presence of video surveillance in the wash bay, he waits until the bus pulls out of the wash bay and into an adjacent parking lot to search and manipulate bags in the cargo hold. Thus, Mr. Sanchez maintains that SA Perry first searched the cargo hold of the bus and identified a black suitcase which aroused his suspicion, and then specifically targeted Mr. Sanchez to coerce his consent.

The Government denies that SA Perry "pre-searched" the cargo hold of the Greyhound bus. SA Perry testified that at times he does look at luggage in the cargo hold of the bus to identify suspicious luggage or match luggage to names on a passenger manifest provided by Greyhound. From his training and experience, SA Perry testified that particular types of luggage, new luggage, or luggage with tags to particular destinations may be more likely to contain contraband. However, in this case, SA Perry testified that he did not examine the luggage in the cargo hold.

The problem with Mr. Sanchez's argument is that it relies upon a series of suppositions that ultimately point to a plot in which SA Perry clandestinely searches the cargo hold of the Greyhound bus to illegally manipulate luggage while strategically avoiding video surveillance and Greyhound employees. As Mr. Sanchez did not put on any testimony or offer evidence to counter SA Perry's credible testimony, for the Court to agree with Mr. Sanchez's position, the

Court would have to base its decision on assertions that are nothing more than conjecture and speculation instead of basing the decision directly on the evidence. Simply put, Mr. Sanchez has failed to establish by a preponderance of the evidence that SA Perry sought to speak with Mr. Sanchez as a result of an illegal, tactile search of his luggage. Thus, Mr. Sanchez cannot demonstrate any violation of his reasonable expectation of privacy. The Court does not find, by a preponderance of the evidence, that SA Perry conducted an illegal search of Mr. Sanchez's bag.

Given that Mr. Sanchez's consent to the search of his bag did not follow a violation of his Fourth Amendment rights, Mr. Sanchez's argument that his purported consent does not purge the taint of SA Perry's violation becomes irrelevant. In the alternative, Mr. Sanchez next argues that under the totality of the circumstances, Mr. Sanchez's consent to search cannot be considered voluntary. The Government bears the burden of proving that consent is given freely and voluntarily. *See United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011). The question of whether consent to a search was in fact voluntary is a question of fact to be determined by the totality of the circumstances. *See id*. (citations omitted). Relevant considerations include:

> "the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent."

*United States v. Thompson*, 546 F.3d 1223, 1226 (10th Cir. 2008) (citations omitted).

Mr. Sanchez argues that SA Perry never informed him of his right to decline to answer questions. Further, the encounter occurred in the narrow confines of a bus with SA Perry in close proximity, SA Perry gave rapid demands for documents and also demanded that Mr. Sanchez open his jacket. The encounter thus was of a coercive nature and unmistakably communicated to

Mr. Sanchez that he was not free to decline SA Perry's requests or otherwise terminate the encounter.

The Government argues that the factors weigh in favor of voluntary consent. Mr. Sanchez was on a public bus, within view of other citizens. *See id*. at 1227 ("[t]he presence of other citizens during a police encounter is one factor suggesting its consensual nature."). SA Perry did not restrain or touch Mr. Sanchez until placing him under arrest. SA Perry did not display his weapon and was wearing plain clothes. SA Perry spoke in a polite tone of voice, did not retain any of Mr. Sanchez's personal effects, and did not obstruct Mr. Sanchez's movement within the bus. Further, there is no requirement that SA Perry inform Mr. Sanchez of his right to refuse a search when seeking permission. *See United States v. Drayton*, 536 U.S. 194, 207 (2002). Rather, the totality of the circumstances must control, without giving extra weight to the absence of this type of warning. *See id*.

The Court finds that Mr. Sanchez's consent was valid and not the product of coercion. A review of the audio recording of the encounter between SA Perry and Mr. Sanchez shows that SA Perry was polite and non-confrontational and did not "demand" documents. While the encounter occurred within the confinement of the bus, Mr. Sanchez does not argue that SA Perry blocked his egress or restricted his movement. Numerous other factors, including that SA Perry was in plain clothes, did not brandish or remove his weapon from its holster, and only retained Mr. Sanchez's ticket and identification for a short time, weigh in the favor of a finding of voluntariness. The Court finds that the Government has met its burden of proving that Mr. Sanchez's consent to search his luggage was given freely and voluntarily.

Finally, Mr. Sanchez argues that SA Perry exceeded the scope of consent when he searched the closed attaché cases located inside of the luggage. Mr. Sanchez's consent conveyed

consent only to search the luggage and not closed items within the luggage. Thus, Mr. Sanchez asserts that a reasonable person would believe that SA Perry was only interested in visually inspecting the contents of Mr. Sanchez's duffle bag.

The Government counters that Mr. Sanchez did not limit the breadth of his consent to the search of his suitcase in any manner. Therefore, it was reasonable for SA Perry to search all the contents within his suitcase, including the empty attaché cases. *See United States v. Jackson*, 381 F.3d 984, 988 (10th Cir. 2004) (finding consent to search carry-on bag included baby powder container within shaving kit). The Court agrees with the Government that the search of Mr. Sanchez's suitcase was within the scope of consent. Mr. Sanchez failed to limit the scope of a general authorization to search. Mr. Sanchez's consent to the search of his luggage could reasonably be construed as consent to search any containers within the luggage which could have held narcotics. The Government has met its burden of proving that the search of Mr. Sanchez's luggage was within the scope of consent. Therefore, Mr. Sanchez has not met his burden of establishing any Fourth Amendment violation, and accordingly, there is no basis to suppress the evidence discovered pursuant to the search of Mr. Sanchez's luggage.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE