IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.           No. CR 15-1278 WJ

EFRAIN SANCHEZ, JR.,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

THIS MATTER comes before the Court upon Defendant Efrain Sanchez's Motion for Reconsideration (**Doc. 48**), filed March 18, 2016. Having considered the parties' written and oral arguments, the testimony and evidence presented at the hearing, and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore is **DENIED**.

### BACKGROUND

In this Court's Memorandum Opinion and Order Denying Defendant's Opposed Motion to Suppress Evidence (**Doc. 47**), filed March 1, 2016, the Court presented detailed background information regarding Special Agent Jarrell W. Perry's ("SA Perry") investigation and arrest of Defendant Efrain Sanchez ("Mr. Sanchez" or "Defendant"). Therefore, in this Memorandum Opinion and Order, the Court presents only facts relevant to Defendant's Motion for Reconsideration.

On board the Greyhound bus, SA Perry asked if Mr. Sanchez had any luggage with him, and Mr. Sanchez replied that he had one piece of checked luggage in the cargo hold of the bus.

SA Perry asked for and received voluntary permission from Mr. Sanchez to search his luggage for contraband. According to SA Perry, Mr. Sanchez was traveling on a one-way ticket From San Bernardino, California to Little Rock Arkansas. Mr. Sanchez was visibly nervous and his hand was shaking when he handed his identification to SA Perry. Based on SA Perry's experience, San Bernardino is a source city and Little Rock is a destination city with respect to illegal narcotics. SA Perry stepped off the bus and located a black-colored suitcase with a Greyhound baggage tag attached in the name of Efrain Sanchez. The baggage tag had Mr. Sanchez' name on it and it listed San Bernardino as the origination city and Little Rock as the destination city.

     SA Perry unzipped Mr. Sanchez' suitcase and underneath his clothing, there were two large black attaché cases. SA Perry testified that the attaché cases were not new, but an older style and that each one had a top flap that covered the opening and a snap device where the top flap cover clicked in. The attaché cases were not locked but upon SA Perry picking up the two attaché cases, he noticed that both were heavy. SA Perry looked inside both attaché cases and even though there were dividers creating various compartments where files or items such as computer laptops could be placed, there was nothing in any of the compartments of either attaché case. However, SA Perry testified that when he held each attaché case, he could feel a large bundle which, based on his training and experience, he believed to be illegal narcotics. The bundle that SA Perry felt in each attaché case was in a hidden compartment because the bundle was not visible in any of the accessible compartments inside each one of the attaché cases. SA Perry used his Leatherman tool and cut a small incision in the top of one of the attaché cases and looked inside. He saw a clear plastic wrapped bundle and inside the clear plastic was a black substance which, based on SA Perry's training and experience, was a masking agent used to mask any odor. SA Perry believed the bundle contained crystal methamphetamine, which was

2

later confirmed. SA Perry then re-boarded the bus, handcuffed Mr. Sanchez, and placed him under arrest. At the DEA office, the hidden compartment in the second attaché case was cut open and the second bundle was removed. A field test indicated that both bundles contained a clear crystal-like substance that tested positive for methamphetamine. The two bundles had a gross weight of approximately 5.10 gross kilograms.

Mr. Sanchez filed a Motion to Suppress Evidence (**Doc. 28**) on October 15, 2015. The Government filed a Response (**Doc. 31**) on October 19, 2015. Mr. Sanchez filed a Reply (**Doc. 33**) on November 17, 2015. The Court held a hearing on the Motion on January 7, 2016, and on March 1, 2016, filed a Memorandum Opinion and Order (**Doc. 47**) denying Mr. Sanchez's Motion to Suppress Evidence. On March 18, 2016, Mr. Sanchez filed a Motion for Reconsideration (**Doc. 48**). The United States filed a Response (**Doc. 51**) on April 6, 2016, and Mr. Sanchez filed a Reply (**Doc. 52**) on April 13, 2016. The Court held a hearing on the matter on June 15, 2016.

## LEGAL STANDARD

Reconsideration is appropriate where there is: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citations omitted). The decision whether to grant a motion to reconsider is committed to the sound discretion of the court. *See Thompson v. City of Lawrence*, 58 F.3d 1511, 1514-15 (10th Cir. 1995). As a practical matter, "[t]o succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *See California v. Summer Del Caribe, Inc.*, 821 F. Supp. 574, 578 (N.D. Cal. 1993) (internal quotation omitted).

The Fourth Amendment protects the "right of the people to be secure in their . . . effects, against unreasonable searches." U.S. CONST. amend. IV. "Travelers have a legitimate expectation of privacy in their personal luggage, which the Fourth Amendment protects." *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir. 1998). However, not every investigative technique which reveals something about the contents of a traveler's luggage constitutes a search within the meaning of the Fourth Amendment. *See id*. For example, an agent's touching of a bag's exterior does not necessarily constitute a search. *See id*. at 636–37. The degree of intrusion is the determining factor as to whether an agent's contact with the exterior of luggage constitutes a search under the Fourth Amendment. *See id*. at 639. When a defendant moves to suppress evidence as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable. *See id*. at 636.

The scope of a search is generally defined by its expressed object, and is limited by the breadth of consent given, applying an objective reasonableness test to measure what a typical person would have understood between the officer and the suspect. *See United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (citations omitted). Any limitation on the extent of a consent to search must come from the person consenting and not from law enforcement. *See United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999). A police search which destroys or renders completely useless the item searched exceeds the scope of any consent given for the search because such a search is so invasive and destructive as to go beyond the scope of the search consented to. *See United States v. Osage*, 235 F.3d 518, 520 (10th Cir. 2000).

**DISCUSSION**

Counsel for Mr. Sanchez submitted this Motion requesting that the Court reconsider its ruling on the issue of whether the search of the two attaché cases inside of Mr. Sanchez's suitcase exceed the scope of his consent. Specifically, counsel notes that he failed to present the claim and controlling law as to whether the scope of consent was exceeded because the SA Perry allegedly destroyed the cases as part of the search. The Court set a hearing on the matter and agreed to reconsider its ruling based on legal and factual issues that were not raised or presented in connection with the initial hearing on the motion to suppress.

Mr. Sanchez notes that SA Perry admitted that after Mr. Sanchez gave consent to search his luggage, SA Perry removed two matching attaché cases from Mr. Sanchez's suitcase, and, using a Leatherman tool, cut into the first attaché case in order to discover the suspected narcotics. Once a packaged bundle of narcotics was discovered in the first attaché case, the second attaché case was cut open at the DEA office. Thus, whether SA Perry's actions were constitutionally permissible centers on the actions he took with respect to the first attaché case. A police search which destroys or renders completely useless the item searched exceeds the scope of any consent given for the search because such a search is so invasive and destructive as to go beyond the scope of the search to which consent was given. *See United States v. Osage*, 235 F.3d 518, 520 (10th Cir. 2000).

In its Response, the United States argues that SA Perry discovered the narcotics through plain view seizure, rendering explicit authorization, additional consent, or the need to obtain a warrant unnecessary. Prior to searching Mr. Sanchez's suitcase, SA Perry had become reasonably suspicious of Defendant given that he had a one-way bus ticket and was traveling from what SA Perry believed to be a source city for narcotics (San Bernardino, California) to a

destination city for narcotics (Little Rock, Arkansas). After receiving consent to search Mr. Sanchez's suitcase, SA Perry opened the suitcase and found two attaché cases that were heavy, unlocked yet empty of any contents. SA Perry was able to feel a hard-like bundle in each attaché case yet the bundles were not in any of the accessible compartments of the attaché cases which meant the bundles were located in false compartments.

      The United States argues that in order to immediately seize evidence in plain view, the Supreme Court clarified that an officer need not know or have near certainty as to the seizable nature of the items. *See Texas v. Brown*, 460 U.S. 730, 741 (1983). Rather, a plain view seizure is permissible if there is probable cause to associate the property with criminal activity. *See id*. at 741–42. Further, the Tenth Circuit has held that when a container's distinctive configuration proclaims its contents, the contents are deemed to be in plain view. *See United States v. Corral*, 970 F.2d 719, 725 (10th Cir. 1992). The United States argues that once SA Perry felt the hard-like bundles within the false compartments of the heavy and empty attaché cases and, based on his experience, it was a foregone conclusion that the bundles contained narcotics. Additionally, once SA Perry had cut into one of the attaché cases, he observed a bundle wrapped in clear plastic with a masking agent, further substantiating his conclusion that the attaché cases contained narcotics.

      Alternatively, the United States argues that the attaché cases were not rendered completely useless, as the attaché cases were still functional pieces of luggage even though they both had interior slits that were made in order to remove the bundles of narcotics.

      In his Reply, Mr. Sanchez argues that his consent to search his suitcase cannot be construed to permit the cutting or slicing of his attaché cases inside his suitcase. SA Perry could have seized the attaché cases and obtained a warrant, subjected the cases to a canine sniff, or

used other technology to discern the contents. Instead, he cut into the false compartment without even giving Mr. Sanchez the opportunity to consent to the additional intrusion. *See United States v. Osage*, 235 F.3d 518, 522 (10th Cir. 2000) ("We therefore hold that, before an officer may actually destroy or render completely useless a container which would otherwise be within the scope of a permissive search, the officer must obtain explicit authorization, or have some other, lawful, basis upon which to proceed."). Mr. Sanchez argues that there is a line between non-intrusive examinations such as taking out the removable lining of an ice chest and destructive searches like breaking open a locked briefcase or opening a sealed case. *See Osage*, 235 F.3d at 521. By inflicting intentional damage to the attaché cases without Mr. Sanchez's consent, SA Perry's search violated the Fourth Amendment and the evidence seized must be suppressed.

The Court finds that SA Perry had a lawful basis to search and seize the attaché cases found in Mr. Sanchez's luggage prior to cutting open the false compartments. SA Perry opened the suitcase and found two identical unlocked attaché cases that were completely empty, yet felt heavy. SA Perry could feel a hard bundle from the outside of the attaché cases yet when he opened each attaché case, the bundled package was not in any of the accessible compartments within the attaché cases. This necessarily meant that there were false compartments in the two attaché cases. The Court finds that based on SA Perry's training and experience and his previous participation in narcotics arrests, the attaché cases had a distinctive configuration that led to the "practical, nontechnical probability that incriminating evidence is involved." *United States v. Corral*, 870 F.2d 719, 724 (10th Cir. 1992), *quoting Texas v. Brown*, 460 U.S. 730, 742 (1983). The Court finds that at that point, it was a foregone conclusion that the two attaché cases contained narcotics. Indeed, it would be hard to conceive of a legitimate use Mr. Sanchez could have for two hidden compartments within two identical attaché cases that themselves were

empty at the time. The probability that the attaché cases contained narcotics was further verified when SA Perry cut into the first attaché case, revealing a clear plastic wrapped bundle containing a black-colored substance which SA Perry knew to be a masking agent specifically used for crystal methamphetamine. The Court therefore finds that based on the facts, circumstances, and SA Perry's training, and after obtaining Mr. Sanchez' consent to search his suitcase, SA Perry had a lawful basis to search and seize the attaché cases found in Mr. Sanchez's luggage even prior to cutting open the false compartments. The subsequent cut made by SA Perry only further verified his correct conclusion that the attaché cases contained narcotics.

      Additionally, the Court finds that the cuts made by SA Perry did not render the attaché cases "completely useless for [their] intended function." *Osage*, 235 F.3d at 520. In *Osage*, an officer found in the defendant's suitcase four aluminum cans labeled "tamales in gravy." Noticing that the label appeared to have been re-glued and that the can felt like it contained packed salt, the officer used a Leatherman tool to cut open the can lid. The Tenth Circuit concluded that the opening of the sealed can "thereby render[ed] it useless and incapable of performing its designated function." *Id*. at 521. At the hearing in this case, the Court inspected the case and found that SA Perry made a small cut in the attaché case, discovering the clear plastic wrapped bundle containing a masking agent. At that point, it was clear that the bundle contained narcotics. SA Perry thereafter made a subsequent larger cut in order to remove the bundle. The second attaché case was cut open at the DEA office and the two bundles weighed approximately 11.2 pounds. The Court finds a significant difference between the cutting open of the lid of a sealed aluminum can in *Osage*, which clearly rendered the can incapable of performing its designated function of sealing the contents, and a small interior cut in an attaché case. SA Perry's cut did not render the attaché case useless or incapable of performing its

designated function. Similarly, in *United States v. Jackson*, the Tenth Circuit found that the removal of the lid of a baby powder container with the blade of a Leatherman tool neither destroyed nor rendered useless the container as it remained capable of performing its intended function. *See* 381 F.3d 984, 989 (10th Cir. 1994). While SA Perry eventually did make a large cut in both attaché cases, this occurred only after it was clear the cases contained narcotics, and additionally was done so for the practical purpose of removing the large bundles from the false compartments. Thus, the Court finds that the small interior cut made by SA Perry did not render the attaché case destroyed or utterly useless.

      Additionally, SA Perry testified that after he had already cut into the attaché cases and removed the bundles, he discovered that someone had previously altered the lining creating the hidden compartment by gluing Velcro strips to the interior part of the lining. This necessarily means that someone had already altered the two attaché cases from their original condition before SA Perry ever made his cut into the hidden compartment. The Court merely makes this observation to point out that the attaché cases had already been altered from their original state before SA Perry ever touched them.

      Accordingly, for the reasons herein stated, the Court finds that Defendant's Motion for Reconsideration is not well-taken and is therefore **DENIED**.

      **SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE